## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ALGERNON C. PERKINS,**

   **Petitioner,**

**v.**           **Case No. 3:22-CV-0678-NJR**

**UNITED STATES OF AMERICA,**

   **Respondent.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Algernon C. Perkins ("Perkins"), a federal prisoner proceeding pro se, has filed a Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 (the "Section 2255 motion"). (Doc. 1). Perkins was sentenced to a 216 month term of imprisonment following his plea of guilty to two counts of interference of commerce by robbery in violation of 18 U.S.C. § 1951 and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Now seeking collateral relief from his sentence, Perkins raises violations of his Sixth Amendment right to the effective assistance of counsel. More specifically, the Court understands Perkins to complain that counsel: (i) improperly advised him to plead guilty insofar as counsel failed to anticipate the sentencing court's upward sentencing variance or otherwise underestimated the sentence imposed; and (ii) failed to advocate zealously for a lesser sentence during the sentencing hearing.

Respondent, the United States of America (the "Government"), has filed a

response in opposition to the Section 2255 motion. (Doc. 7). Through its response, the Government contends that the motion is: (i) procedurally barred for Perkins's failure to timely file within the one-year limitations period prescribed by 28 U.S.C. § 2255(f); and (ii) otherwise meritless insofar as Perkins is unable to show that counsel's performance during either phase of his criminal proceedings was deficient and prejudicial.

## BACKGROUND

Through the filing of a superseding indictment on November 14, 2018, Perkins was charged with two counts of interference of commerce by robbery in violation of 18 U.S.C. § 1951 and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *United States v. Perkins*, Case No. 3:18-CR-30166-NJR-01, Doc. 23. The superseding indictment alleged that, on or about September 7, 2018, Perkins robbed a Cash Store, a financial business engaging in interstate commerce, in Marion County, Illinois, which lies within this district. *Id.* at 1. In doing so, he drew a handgun to the back of a Cash Store employee's head and threatened to shoot her. *Id.* at 1-2. The indictment further alleged that, on or about September 29, 2018, Perkins robbed another Cash Store located in Madison County, Illinois, which also lies within this district. *Id.* at 2. During the September 29 robbery, Perkins allegedly held a handgun against the back of an employee of the store. *Id.*

In advance of the final pre-trial conference, Perkins requested a change of plea hearing. *See id.*, Doc. 40. On July 12, 2019, the change-of-plea hearing was held before the undersigned. *Id.*, Doc. 41. Perkins was placed under oath and was warned that he could be charged with perjury if he lied, to which he indicated that he understood. *Id.*, Doc. 69

at 3-4. The undersigned then asked Perkins questions relevant to determining his competency and ability to understand the proceedings, during which Perkins denied any prior treatment for mental health issues and denied being under the influence of alcohol, drugs, or medications. *Id.* at 5-6. The undersigned then explained to Perkins the right to trial and associated rights that he was waiving by pleading guilty. *Id.* at 6-10. Perkins affirmed that he wished to give up those rights by pleading guilty. *Id.* at 10. When asked by the undersigned about the assistance of counsel, Perkins affirmed that he had fully discussed the charges with his attorney, James Stern ("Mr. Stern"). *Id.*

After the charges against Perkins were read into the record by the Government, the undersigned explained the nature of the offenses and the statutory penalties Perkins faced by pleading guilty. *Id.* at 10-14. On the two counts of interference of commerce by robbery, Perkins faced a maximum of 20 years of imprisonment, a $250,000 fine, a 3-year term of supervised release, and a $100 special assessment. *Id.* at 11-12. On the count of brandishing a firearm during a crime of violence, Perkins faced a maximum of life imprisonment, which must run consecutive to any sentence imposed on the other counts, a $250,000 fine, a 5-year term of supervised release, and a $100 special assessment. *Id.* at 12-13. Perkins affirmed that he understood and denied having any questions. *Id.* at 10-14.

The undersigned then addressed the voluntariness of Perkins's plea. Perkins stated that he "was told if [he did not] come to an open . . . plea[,]" the Government would file a second superseding indictment." *Id.* at 14-15. The undersigned explained that the ultimate determination to enter a guilty plea remained solely Perkins's decision. *Id.* at 15. Perkins denied that anyone had pressured or forced him to plead guilty. *Id.* He also

denied that anyone had made him any prediction or promise as to his sentence. *Id.* The undersigned explained the nature of the sentencing guidelines and asked Perkins if he had discussed the advisory character of the guidelines with Mr. Stern, which Perkins affirmed. *Id.* at 15-16. After the Government read the stipulation of facts in support of the plea, Perkins agreed with the facts as described by the Government and denied having any questions. *Id.* at 18-20. Perkins then affirmed that he wished to enter his plea on his own free will and pleaded guilty to all three counts. *Id.* at 21. Finding Perkins's guilty plea entered knowingly and voluntarily, the undersigned accepted his plea. *Id.*

Following Perkins's guilty plea, the United States Probation Office prepared an initial presentence report ("PSR"), *id.*, Doc. 45, which was subsequently revised to include the police report information about Perkins's prior convictions, *see id.*, Docs. 49, 49-1. The PSR recommended a six-level sentencing enhancement based on Perkins's brandishing of a firearm during the September 29 robbery. *Id.*, Doc. 49 at 6. The PSR also noted that the same enhancement was inapplicable to Perkins's brandishing of a firearm during the September 7 robbery insofar as he had been charged for it under 18 U.S.C. § 924(c). *Id.* at 6.

In preparation for sentencing, Mr. Stern filed a sentencing memorandum. *Id.*, Doc. 46. Through the memorandum, Mr. Stern argued that the six-level enhancement was unfair because, in part, "a firearm is nearly always going to be used this way in a robbery[.]" *Id.* at 1. Mr. Stern also argued that Perkins's criminal history was overstated. *Id.* at 1-2. Additionally, Mr. Stern requested the consideration of several potentially mitigating factors—such as the difficulties Perkins has faced in his life, his financial

support of his children, and his ability to engage in employment during incarceration—

in the imposition of Perkins's sentence pursuant to 18 U.S.C. § 3553(a). *Id.* at 2.

On October 24, 2019, a sentencing hearing was held before the undersigned. *Id.*,

Doc. 50. The undersigned began by asking Perkins whether he had discussed the PSR

with Mr. Stern, which Perkins affirmed. *Id.*, Doc. 59 at 5. The undersigned then accepted

the Government's request for an additional one-level decrease for the acceptance of

responsibility. *Id.* Mr. Stern conceded that the Probation Office correctly calculated the

offense levels but reiterated the arguments and mitigating factors set forth in the

sentencing memorandum. *See id.* at 15-19. Given the opportunity to make a statement,

Perkins expressed remorse for his actions and apologized. *Id.* at 20-22.

The undersigned sentenced Perkins to a total term of imprisonment of 216 months

and 3 years of supervised release, noting that the low end of the sentencing guidelines

was not sufficient to "reflect the seriousness of the offense, promote respect for the law[,]

provide just punishment, and, . . . protect the public from further crimes[.]" *Id.* at 25.

Judgement was entered later that day. *Id.*, Doc. 53.

Perkins did not file a direct appeal with the United States Court of Appeals for the

Seventh Circuit. On April 6, 2022, Perkins filed the Section 2255 motion. (Doc. 1). Upon

preliminary review, the Government was ordered to file a response. (Doc. 3). Perkins has

not filed a reply brief.

## LEGAL STANDARD

28 U.S.C. § 2255 provides a federal prisoner with a post-conviction remedy to test

the legality of their detention "upon the ground that the sentence was imposed in

violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief

under § 2255 is an extraordinary remedy because it asks the district court essentially to

reopen the criminal process to a person who already has had an opportunity for full

process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United*

*States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary

situations, such as an error of constitutional or jurisdictional magnitude or where a

fundamental defect has occurred which results in a complete miscarriage of justice." *Blake*

*v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

DISCUSSION

The Court will address, in turn, the timeliness of the Section 2255 Motion and

Perkins's claims of ineffective assistance as to the counseling of his guilty plea and at

sentencing.

**A.    Timeliness**

A motion for relief under 28 U.S.C. § 2255 is subject to a one-year limitations

period, which runs from the latest of four possible dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by
> governmental action in violation of the Constitution or laws of the
> United States is removed, if the movant was prevented from making a
> motion by such governmental action;
>
> (3) The date on which the right asserted was initially recognized by the
> Supreme Court, if that right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on collateral review;
> or
>
> (4) The date on which the facts supporting the claim or claims presented

could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In a typical case, the limitations period will begin to run under subsection (f)(1) of § 2255, or the date on which the challenged conviction becomes "final." *Id.* § 2255(f)(1). Where a defendant does not file for direct review, as here, finality coincides with the expiration of the deadline to file a notice of appeal, *see Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013), generally 14 days after the entry of judgment, Fed. R. App. P. 4(b)(1)(A)(i).

The limitations period, however, is not jurisdictional and may be subject to equitable tolling. *Nolan v. United States*, 358 F.3d 480, 483 (7th Cir. 2004). However, "the threshold necessary to trigger equitable tolling is very high[.]" *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). A petitioner seeking equitable tolling "must show: (1) that [they have] been pursuing [their] rights diligently; and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). In establishing diligence, a petitioner must demonstrate their "reasonable effort throughout the limitations period" beyond "mere conclusory allegations of diligence[.]" *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (citing *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016)). Extraordinary circumstances exist only where an external factor beyond the petitioner's control caused the delay in filing. *Lombardo*, 860 F.3d at 552 (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016)).

Here, Perkins's conviction became final for purposes of 28 U.S.C. § 2254(f)(1) on

November 7, 2019—14 days from the date of judgment. The limitations period would thus have expired one year later—on November 7, 2020. Perkins, however, did not file the Section 2255 motion until April 2022. Accordingly, the motion is time-barred absent any applicable exception to the limitations period.

Recognizing this procedural hurdle, Perkins contends that the Section 2255 motion is equitably tolled based on two extraordinary circumstances—namely, his homelessness from February through May 2020 resulting from an erroneous release from custody, and the administrative lockdowns due to the Covid-19 pandemic at the correctional facility where he was housed. (*See* Doc. 1 at 11). At no point, however, does he attempt to show that he exercised reasonable diligence in seeking collateral review within the applicable limitations period. Nor does he articulate how the period of homelessness and the administrative lockdowns caused the delay in his filing. Perkins fails to satisfy either element for equitable tolling.

For these reasons, the Court concludes that the Section 2255 motion is procedurally barred as untimely.

## B.    Ineffective Assistance of Counsel

Even assuming for the sake of argument that the Section 2255 motion is not time-barred, the motion fails on the merits.

A Sixth Amendment claim of ineffective assistance of counsel is analyzed under the Supreme Court's two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing

professional norms.'" *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). The petitioner also must show that "counsel's deficient performance prejudiced him, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McElvaney*, 735 F.3d at 532 (quoting *Strickland*, 466 U.S. at 688). When challenging a sentence, "a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland*, 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence" in the sentence. *Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006). It is not enough to show that the errors possibly had "some conceivable effect" on the sentence. *Strickland*, 466 U.S. at 694.

A federal court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong insofar as the "failure to satisfy either prong is fatal" to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

1.    *Counseling of the Guilty Plea*

Perkins contends that Mr. Stern improperly advised Perkins to plead guilty by stating that Perkins would not "receive that much time" and that the sentencing court would "give [Perkins] . . . 10-12 years[.]" (Doc. 1 at 4).

Even if Perkins was inadequately counseled or made improper promises by Mr. Stern, he is unable to show prejudice under *Strickland*. The Rule 11 colloquy at the change-

of-plea hearing, as already reviewed above, demonstrates that any ostensible deficiency in Mr. Stern's counseling was not a decisive factor in Perkins's decision to plead guilty. *See United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (citing *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996)). Notwithstanding the supposed predictions by Mr. Stern, Perkins affirmed his understanding of the statutory maximum sentence, as well as the sentencing court's discretion to impose a sentence above the sentencing guidelines. *See Perkins*, Case No. 3:18-CR-30166-NJR-01, Doc. 69 at 10-16. The validity of Perkins's guilty plea, thus, was not prejudiced by Mr. Stern's ostensible failure to anticipate an upward variance in the sentence. *See Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

Accordingly, Perkins's claim of ineffective assistance as to the counseling of his guilty plea is without merit.

### 2. *Inadequate Advocacy at the Sentencing Hearing*

Perkins also contends that, at the sentencing hearing, Mr. Stern did not "have any type of arguments arranged" or "put any effort" to seek a lesser sentence. (Doc. 1 at 4). These allegations, however, are flatly negated by the record such that Perkins is unable to show deficient performance.

As discussed, Mr. Stern submitted a sentencing memorandum, arguing that the sentencing enhancement recommended by the Probation Office was unfair and that Perkins's criminal history was exaggerated. *Perkins*, Case No. 3:18-CR-30166-NJR-01, Doc. 46 at 1-2. Mr. Stern also requested that the sentencing court consider, as mitigating factors, the considerable hardship that Perkins had endured in his youth, Perkins's

financial responsibilities for supporting his children, and his engagement in gainful employment during incarceration. *Id.* at 2. At the hearing, Mr. Stern again presented those arguments and potentially mitigating factors. *See id.*, Doc. 59 at 15-19. The record suggests that Mr. Stern did not make formal objections based on those arguments insofar as the offense level calculations in the PSR were accurate. *See id.* at 15-16. Indeed, counsel's decision to forego objections that would prove futile or meritless does not constitute deficient performance. *Faucett v. United States*, 872 F.3d 506, 512 (7th Cir. 2017). Perkins fails to show that Mr. Stern's representation during the sentencing phase fell below an objective standard of reasonableness to establish the deficient performance prong of the *Strickland* analysis.

Accordingly, the Court concludes that Perkins's claim of ineffective assistance at sentencing is without merit.

## CONCLUSION

For the reasons stated above, the Motion to Vacate, Set Aside, or Correct a Sentence (Doc. 1) filed by Petitioner Algernon C. Perkins pursuant to 28 U.S.C. § 2255 is **DENIED** because it is untimely and otherwise without merit. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a

constitutional right." To meet this standard, a petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)) (emphasis omitted); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (holding that to obtain a certificate of appealability after dismissal on procedural grounds, a petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling").

Here, there is no basis for finding that reasonable jurists would debate the correctness of this procedural ruling or that Perkins presented a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability is denied.

### NOTICE OF APPELLATE RIGHTS

If Perkins wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Perkins chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned Chief District Judge has already declined to issue a certificate of appealability. So, Perkins must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal *within 30 days* from the entry of

judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Perkins files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Perkins cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Perkins plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Perkins wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to

amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Perkins showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED:  April 7, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**